___FILED ___ENTERED
___LODGED ___RECEIVED

FEB 14 2011

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SYLVESTER ARNEZ REDD, JR.  *

v.  * Civil No. RDB-09-1497

UNITED STATES OF AMERICA  *

* * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA  *

v.  * Criminal No. RDB-04-0417

SYLVESTER ARNEZ REDD, JR.  *

## MEMORANDUM OPINION

On June 8, 2009, Sylvester Arnez Redd, Jr., filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 48). Redd challenges the sentence of 111 months that this Court imposed on June 30, 2008.[1] The Government filed an opposition and Redd filed a reply. This Court has reviewed the record and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Motion to Vacate Under 28 U.S.C. § 2255 is DENIED.

## BACKGROUND

On September 14, 2004, a federal grand jury indicted Sylvester Arnez Redd, Jr. ("Redd") with distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841 (Count One), and with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924 (c) (Count Five). On January 18, 2005, Redd appeared before this Court and pled guilty to both counts. Pursuant to a plea agreement with the government, Redd waived his

---

[1] Redd originally received a sentence of 123 months on November 18, 2005. On June 30, 2008, the Court reduced the sentence to 111 months after the sentencing guidelines for crack cocaine offenses were amended.

1

right to appeal under 18 U.S.C. 3742 with limited exceptions.

The relevant facts are not in dispute and were stipulated to by Redd in his plea agreement. In sum, those facts are as follows: On June 8, 2004, a cooperating witness ("CW") recorded conversations with Redd during which Redd agreed to sell crack cocaine to the CW. Subsequently, Redd delivered 49.6 grams of crack cocaine to the CW in exchange for $1,500.00. On June 17, 2004, another recorded conversation took place between Redd and the CW, in which a second purchase and delivery of crack cocaine was discussed. That delivery took place on June 21, 2004, when Redd sold 55 grams of crack cocaine to CW for $1,800.00. Both of these drug transactions took place at a Popeye's restaurant located on the 300 block of North Broadway in Baltimore, Maryland. On September 6, 2004, a search warrant was executed at Redd's residence at 3811 Yolando Road in Baltimore. During the search, DEA agents found 66 grams of cocaine, 79 grams of crack cocaine, and a .380 caliber semi-automatic handgun. All of these items were discovered near one another above the ceiling tiles in the basement. *See* Plea Agreement p. 6.

On November 18, 2005, Redd was sentenced to 123 months in prison. Redd filed an appeal on November 28, 2005. On January 22, 2007, the United States Court of Appeals for the Fourth Circuit affirmed his convictions and dismissed his appeal of his sentence. The Court of Appeals found that Redd's guilty plea was knowing and voluntary and that Redd had been properly advised of his rights, the offenses charged, the mandatory minimum sentence, and the maximum sentence for the offenses. *See United States v. Redd,* 213 Fed. Appx. 200 (2007); 2007 U.S. App. LEXIS 1366, at *3 (4th Cir. Jan. 22, 2007). The Court also noted that an independent factual basis for the plea existed and that the plea was not influenced or coerced by any promises. *Id.*

On December 18, 2008, Redd filed another Notice of Appeal as well as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF Nos. 46 and 48). The Court of Appeals for the Fourth Circuit dismissed Redd's appeal on March 19, 2009 (ECF No. 51). On June 8, 2009, Redd filed a second motion pursuant to 28 U.S.C. § 2255 challenging his sentence on grounds that "the court should not have accepted a guilty plea to the gun charge pursuant to 11 USC 924(a) [sic]." Petr.'s Am. Mem. in Sup. of Mot. to Vacate Sentence 5 (ECF No. 53). The second motion was ordered to be docketed as an amended motion to the first Motion to Vacate. Finally, on July 9, 2009, Redd filed a Supplemental Motion to add a new ground to his request for reconsideration of his sentence. Specifically, Redd petitioned this Court to reconsider his sentence with an additional downward departure so that it conforms with the base level of "coke" rather than that of "crack." Petr.'s Supplemental Mot. 1 (ECF No. 55).

## ANALYSIS

Under 28 U.S.C. § 2255, a prisoner has one year to file a motion for habeas corpus. Redd's motion for relief fails first and foremost because it was filed beyond the one-year time limitation allowed under § 2255.

Even if Redd had timely filed his motion, this case may also be disposed of in favor of the government on the merits. Redd alleges that the sentencing court should not have accepted the guilty plea to Count Five, the gun charge under § 924 (c), because the evidence was not sufficient to prove that charge. Specifically, Redd argues that the record is silent regarding how the firearm was possessed in furtherance of a drug crime, and he states that he did not possess the firearm in the furtherance of the possession of drugs with the intent to deliver them. Def.'s Resp. to Government's Mot. to Dismiss Petr.'s Mot. Under § 2255 7-8 (ECF No. 51). However, after a review of the facts in this case and relevant case law on this issue, the Court determines that a

factual basis does exist to support Redd's plea agreement under § 924 (c).

I. Time Limitation

As stated above, a prisoner has one year to file a motion for habeas corpus under 28 U.S.C. § 2255. Redd had one year from the date on which the judgment of his conviction became final to file his motion. For criminal defendants like Redd who do not file a petition for certiorari with the Supreme Court on direct review, the judgment of conviction becomes final 90 days after the entry of judgment by an appellate court, when the opportunity to file a petition for a writ of certiorari expires.[2] See U.S. Sup.Ct. R. 13(1).

The Court of Appeals for the Fourth Circuit entered its judgment in Redd's case on January 22, 2007 (ECF No. 36). Redd did not file a petition for certiorari within 90 days, so his judgment became final on April 22, 2007. Thus, the opportunity to file a motion under § 2255 expired one year later, on April 22, 2008. Redd's first motion was filed on December 18, 2008, almost eight months after the time limitation expired. Redd's second motion was filed June 8, 2009, over 13 months after the time limitation expired. Therefore, given his failure to meet the specific time limitations established by the statute, Redd's motion under § 2255 as well as his Supplemental Motion must fail.

II. Redd's Claim That the Court Improperly Accepted a Guilty Plea for the Gun Charge

The statute cited by Redd, 18 U.S.C. § 924 (c), reads in part: "[A] any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . (i) be sentenced to a term of imprisonment of not less than 5 years . . . ." 18 U.S.C. § 924(c)(1)(A). In his plea

---

[2] See Clay v. U.S., 537 U.S. 522, 525, 532 (2003) (holding that "For the purpose of starting the clock on § 2255's one-year limitation period, we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.").

4

agreement, Redd pled guilty to possessing a .380 caliber semi-automatic handgun in furtherance of a drug trafficking crime, with the crime described as "the distribution and possession with intent to distribute cocaine and cocaine base as described in Counts One – Four of the Superseding Indictment." Plea Agreement p. 2.

It appears that Redd was originally arguing that the evidence in his case did not effectively establish that the gun was used in the commission of the crime. In his amended memorandum in support of his motion to vacate the sentence, he cited a series of cases in an apparent effort to clarify the threshold for a § 924 (c) (1) charge of use of a firearm during a crime. Yet as the government points out, Redd did not plead guilty to *use* of a firearm in the commission of a crime. Instead, Redd pled guilty to *possessing* a firearm in furtherance of a drug trafficking crime. In his subsequent response, Redd argues that the cases he cited are nevertheless persuasive because the statute requires possession "in furtherance of any such crime" and "the proffer of the Government and the agreement of the defendant was not sufficient to show that the gun in this case was possessed in furtherance of the crime of conviction." Def.'s Resp. to Government's Mot. to Dismiss Petr.'s Mot. Under § 2255 8 (ECF No. 51).

A court may enter judgment on a guilty plea when it has determined that a factual basis exists for the plea. Fed.R.Crim.P. 11(b)(3). A factual basis may be established through a stipulated recitation of facts. *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996). In fact, the Fourth Circuit has stated that it will accept any reasonable determination of a factual basis when that determination is based on anything that appears in the record. *United States v. Mastrapa*, 509 F.3d 652 (4th Cir. 2007). Further, the Fourth Circuit has noted that a district court need only establish that "the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Carr*, 271 F.3d

172, 179 n. 6 (4th Cir. 2001) (citing United States v. Maher, 108 F.3d 1513, 1524 (4th Cir. 1997).

In order to establish that a defendant has violated § 924 (c) (1) in furtherance of a drug trafficking crime, the government must present evidence "indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax* 293 F.3d 701, 705 (4th Cir. 2002). A fact finder must then determine whether the firearm was possessed for such a purpose. *Id.*

Redd states that courts require something more than possession to establish a violation under § 924 (c) (1). (Def.'s Resp. to Government's Mot. to Dismiss Petr.'s Mot. Under § 2255 4) (ECF No. 51). He claims that in his case, the drugs were simply found near the gun and no nexus existed between the firearm and the charges in the superseding indictment. *Id.* at 8. Although Redd is technically correct on his point about mere possession, a decision of the Fifth Circuit Court of Appeals, *United States v. Ceballos-Torres,* 218 F.3d 409, 414 (5th Cir. 2000), puts that point in its proper context. In that case, the Fifth Circuit observed that one may not assume, simply because a drug dealer possesses a gun, that the gun is used to protect the dealer or his drugs. *Id.* If a drug trafficker uses guns to hunt or displays antique firearms mounted on the wall, for example, a fact finder should not presume that those guns are used in furtherance of the drug trafficking. *Id.* at 415.

Nonetheless, the Fourth Circuit has recognized that a trier of fact may determine that a link exists between a firearm and drug trafficking by examining factors such as "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" *United States v. Lomax,* 293 F.3d 701, 705 (4th Cir. 2002) (quoting *United States v.*

*Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). The Fourth Circuit has stated that a fact finder may also consider "the numerous ways in which a firearm might further or advance drug trafficking," including, for example, providing a defense against the theft of drugs, or reducing the probability that such a theft might be attempted. *Lomax*, 293 F.3d at 705.

In Redd's case, the type of drug activity being conducted involved drug sales. Agents recorded two such drug sales, which established that Redd was a drug dealer. The gun was found pursuant to a search warrant based on probable cause of criminal wrongdoing. Further, the record reflects that the drugs were found near the weapon. Both items were found in close proximity to one another above the ceiling tiles in the basement.

Courts routinely give a considerable amount of weight to the proximity of a firearm to drugs in determining whether a sufficient nexus exists to conclude that the firearm was possessed in furtherance for the drug crime. *See Ceballos-Torres*, 218 F.3d at 415; *United States v. Luciano*, 329 F.3d 1 (1st Cir. 2003); *United States v. Abraham*, 213 Fed. Appx. 240 (4th Cir. 2007). In *Ceballos-Torres*, 218 F.3d at 415, the Fifth Circuit found that a gun was used in furtherance of drug trafficking in part because the gun was possessed in an apartment along with a substantial amount of drugs and money. 218 F.3d at 415. In *United States v. Luciano*, 329 F.3d 1, (1st Cir. 2003), agents found drugs and weapons in the same crawl space in a ceiling. The First Circuit observed that "[g]iven the close proximity of the firearms and loaded magazines to the significant stockpile of heroin, we have no difficulty concluding that there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under §924." 329 F.3d at 6.

In *United States v. Abraham*, 213 Fed. Appx. 240 (4th Cir. 2007), officers discovered a Glock Model 19, about 70 grams of crack cocaine, and 40 grams of marijuana in a bedroom

closet. The court rationalized that "[t]he type of firearm and proximity of the weapon in relation to the crack cocaine provide the evidentiary bases for the jury's verdict on Count II [that Defendant used and carried a firearm and possessed a firearm in furtherance of the drug trafficking crime charged in Count I]." *Abraham*, 213 Fed. Appx. at 251.

In *United States v. Milbourne*, 129 Fed. Appx. 861, (4th Cir. 2005), drugs were found in a jacket hanging in a bedroom closest and a gun was found under the mattress. The Fourth Circuit weighed several factors and noted that because the gun was in the same room as the drugs, "Milbourne could have grabbed it and put it in the jacket on his way out of the house for a drug sale." *Milbourne*, 129 Fed. Appx. at 868. Reviewing all the evidence in the light most favorable to the government, the Court concluded that a reasonable fact finder could have determined that Milbourne's possession of the gun was in furtherance of a drug crime. *Id.*

In Redd's case, the facts stipulated to in the plea agreement establish that drugs were found in close proximity to the weapon. These facts are similar to previous cases upholding convictions under § 924 where drugs and weapons have been found in close proximity to one another, such as crawl spaces or closets. Thus when the government provided evidence that the gun and the drugs were found together, combined with the type of activity and circumstances under which these items were found, it established sufficient evidence to support the plea agreement on the gun charge.

For the reasons stated herein, Redd's Motion to Vacate and his Supplemental Motion are DENIED and the Government's Motion to Dismiss is GRANTED. A Separate Order follows.

Dated February 14, 2011.

/s/ *Richard D. Bennett*
Richard D. Bennett
United States District Judge